IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COLIN BRECHBILL and SFR SOFTWARE SOLUTIONS LLC, | \| | |
| | \| | |
| Plaintiffs, | \| | |
| | \| | |
| v. | \| | Civil Action File No. |
| | \| | |
| HOME INVEST LLC; HOME INVEST OPERATIONS LLC; HOME INVEST TECHNOLOGIES LLC; DRAGAN BERGER and NATE ARMSTRONG, DOE ENTITIES 1-10; and DOE INDIVIDUALS 11-20. | \| | |
| | \| | |
| Defendants. | \| | |

## COMPLAINT

Plaintiffs Colin Brechbill and SFR Software Solutions LLC file this Complaint against Home Invest LLC, Home Invest Operations LLC, Home Invest Technologies LLC, Dragan Berger, Nate Armstrong and Doe Entities and Individuals 1-20 as follows:

### I.     Introduction

1.

Defendants have swindled Plaintiffs. Defendants owe Plaintiffs a substantial amount of money and, perhaps more importantly, Defendants are using Plaintiffs' registered computer source code without Plaintiffs' permission. So, not only have

Defendants defrauded Plaintiffs, but they also are engaged in ongoing infringement of Plaintiffs' copyrighted computer source code.

## II.    Parties

2.

Plaintiff Brechbill is a citizen and resident of the State of Florida.

3.

Plaintiff SFR Software Solutions LLC ("SFR") is a limited liability company organized and existing under the laws of the State of Florida, all of whose members reside in the State of Florida and is thus a citizen and resident of the State of Florida.

4.

Defendant Home Invest LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 444 North Michigan Avenue, Suite 1200, Chicago, Illinois 60611. Home Invest, LLC may be served with a copy of the Complaint in this action through its registered agent Advantage Delaware, LLC, 3524 Silverside Road, Suite 35B, Wilmington, Delaware 19810.

5.

Defendant Home Invest Operations LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 444 North Michigan Avenue, Suite 1200, Chicago, Illinois

60611. Home Invest Operations, LLC may be served with a copy of the Complaint in this action through its registered agent Advantage Delaware, LLC, 3524 Silverside Road, Suite 35B, Wilmington, Delaware 19810.

6.

Defendant Home Invest Technologies LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 444 North Michigan Avenue, Suite 1200, Chicago, Illinois 60611. Home Invest Technologies, LLC may be served with a copy of the Complaint in this action through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7.

Defendant Berger is believed to be a resident of the State of Illinois and to be a resident within this judicial district.

8.

Defendant Armstrong is believed to be a resident of the State of Wisconsin who regularly travels to this judicial district. Furthermore, this travel is done in connection with the business, the dispute and the infringement described in this Complaint. Furthermore, the wrongful and tortious conduct by him, as described in this Complaint, occurred in and caused harm in this judicial district.

9.

Doe Entities 1-10 are entities, whose identity is currently unknown to Plaintiffs, who participated in the wrongful acts set out in this Complaint. More specifically, these are entities that are, as purported customers of one or more of the Defendants, using and accessing Plaintiffs' source code without Plaintiffs' permission.

10.

Doe Individuals 1-10 are individuals, whose identity is currently unknown to Plaintiffs, who participated in the wrongful acts set out in this Complaint. More specifically, these are individuals who are, as purported customers of one or more of the Defendants, using and accessing Plaintiffs' source code without Plaintiffs' permission.

### III.    Subject Matter Jurisdiction

11.

The Court has subject matter jurisdiction over this matter as it is a federal question action based on the Copyright Act pursuant to 28 U.S.C. Section 1338(a) and (b) and Section 10(B) of the Exchange Act, 15 U.S.C. Section 78J(B), and Rule 10B-5 Promulgated thereunder by the SEC, 17 C.F.R. §240.10B-5.

12.

This Court also has subject matter jurisdiction over this matter because it is a federal diversity action pursuant to 28 U.S.C. Section 1332 as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.

13.

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a) because they are related to, form part of, and arise from the same case or controversy as the federal claims herein.

### IV. Personal Jurisdiction

14.

This Court has personal jurisdiction over Defendants because they transact business in the State of Illinois, have committed a tortious injury to Plaintiff within the State of Illinois (as discussed in the counts below) through Defendants' conduct occurring both inside and outside the State of Illinois.

### V. Venue

15.

Venue is proper in this district pursuant to 28 U.S.C. Section 1400(a) because Defendants are registered to do business in the State of Illinois, have business locations within the State of Illinois or have agents within the State of Illinois. Venue is also proper because the two individual Defendants reside within this judicial district.

## VI. <u>Factual Allegations</u>

### *a. Defendants' Background*

16.

Home Invest LLC is the parent company of all the other Home Invest entities described in this Complaint as well as other entities bearing the name "Home Invest." These entities include, but are not limited to Defendant Home Invest Operations LLC; Defendant Home Invest Technologies LLC; non-party Home Invest Acquisitions LLC; non-party Home Invest Assets LLC; non party Home Invest Property Management LLC; and Home Invest University LLC; some of which may be Doe Entities.

17.

When the phrase "Home Invest" is used in this Complaint, it refers to the actions of the actions of the business as a whole, as opposed to any specific party or entity. For example, when referring to the website www.homeinvest.com, Plaintiffs will use the term "Home Invest's website." But, where the actions of a particular entity are concerned – such as a party to a contract – a more particularized allegation will be made.

18.

Home Invest describes itself as "a full-service real estate investment company." This description is made, for example, on Home Invest's website, which is found at homeinvest.com.

19.

Home Invest holds itself out to the general public as offering a variety of financial, investment, and real-estate related services such as:

- "Passive Income.  Purchase a property, let Home Invest do all the hard work, collect your returns. It's that easy.

- Asset Lending. Use retirement funds, such as SDIRA, 1031 Exchange, and 401k to purchase rental properties.

- Fix & Flip.  We work with local contractors to get your investment property ready for resale.

- Invest in Growth Fund. If you are an accredited investor, please contact us for more information."

(www.homeinvest.com.)

20.

### b.    Mr. Brechbill and SFR Software's Background

Plaintiff Brechbill is the architect and creator of several proprietary technologies created to increase operational efficiency and scale for the single-family rental space. He has successfully launched several platforms that provide

streamlined efficiency in the acquisition, construction rehab, property management and maintenance verticals of the single-family rental space.

21.

At the core of this action is proprietary property management software ("PMS") developed by Mr. Brechbill. PMS is an institutional level property management software available to non-institutional managers and investors. PMS improves scaled property management operators, which gets them organized and effective while dramatically reducing administrative overhead and saving time.

22.

Plaintiff SFR is the owner of the source code, software and related technologies and documentation that drive the PMS.

23.

The PMS source code and software is original.

24.

Since initially created in 2016, Plaintiffs have regularly add features and upgrades to the PMS Software.

25.

Version 1.0 of the PMS source code and software is registered with the United States Copyright Office, as Registration TX0008406394. A copy of the Certificate of Registration is attached as Exhibit A.

26.

On September 20, 2017, SFR Software filed an application to register Version 1.1 of the PMS source code with the United States Copyright Office. That application is currently pending.

### c. *Plaintiffs Approach and then Defraud Plaintiffs*

27.

In May 2017, an intermediary asked Mr. Brechbill to reach out to Defendants to explore working together.

28.

Defendants became interested in licensing Plaintiffs' PMS platform for their (Defendants') business.

29.

Because of his experience and expertise, Defendants also became interested in hiring Mr. Brechbill as a consultant, particularly, for Mr. Brechbill to help Defendants implement Plaintiffs' PMS platform and to provide other consulting services to Defendants.

30.

Prior to the Parties entering any agreements, they obviously discussed what compensation Defendants would pay Plaintiffs for use of Plaintiffs' PMS platform

and for Mr. Brechbill's services. Some of this compensation was tied to the financial performance of Defendants' business.

31.

Importantly, the Parties also discussed *how* the compensation Plaintiffs would receive from Defendants would be calculated.

32.

Plaintiffs communicated to Defendants that they (Plaintiffs) would not enter any agreements unless Defendants provided: (a) monetary compensation, (b) periodic profit sharing and (c) equity in the enterprise.

33.

After a few weeks of negotiating and discussing the enterprise, Plaintiffs believed they had reached a fair agreement with Defendants.

34.

Home Invest Operations, LLC and Colin Brechbill entered into a Consulting and Software Development Agreement ("Consulting Agreement"), effective June 15, 2017.[1]

35.

---

[1] The Agreements referenced in this Complaint are not attached to this Complaint because they contain confidentiality provisions. At the appropriate time, the Agreements can be filed under seal.

Home Invest Technologies, LLC, on one hand, and Mr. Brechbill and SFR Software, on the other, entered a Software License Agreement ("License Agreement"), also effective as of June 15, 2017.

36.

The Consulting Agreement contained provisions for Defendants to compensate Plaintiffs and pay certain of Plaintiffs' enterprise-related expenses.

37.

Section 2(c) of the Consulting Agreement purports to place Mr. Brechbill in a "Profit Sharing Pool" for the "Net Profits" of "the Company's operating divisions."

38.

Section 2(d) of the Consulting Agreement purported to award 15,790 non-voting Class B Common Units of Home Invest, LLC to Mr. Brechbill.

39.

These units were provided for in a separate Unit Award Agreement between Brechbill and Home Invest LLC.

### d. *Plaintiffs Performed Their Obligations Under the Contracts*

40.

After the Agreements were signed, Plaintiffs promptly began to work to adapt their PMS platform for Defendants' business.

41.

Defendants' property management platform reached its greatest profitability after and because of Plaintiffs' involvement. Plaintiffs' involvement increased the revenue from Defendants' platform and reduced the amount of overhead needed to operate the platform.

42.

Plaintiffs performed other valuable services for Defendants, such as implementing an interactive voice response system, switched to a more efficient, lower cost phone system and made other changes that readied Defendants to scale the Home Invest business to reach new markets under centralized operations.

43.

Additionally, Plaintiffs implemented a self-showing lock box system that allowed Defendants to lease more homes in shorter period of times than they ever had. Plaintiffs also brought on third-party leasing agents at lower costs, which reduced Defendants' overhead, increased the number of leasing agents viewing the property's Defendants' platform and allowed more homes to be leased and at reduced prices.

44.

Plaintiffs did far more than what the Agreements required them to do. For example, to further improve Defendants' platform, Plaintiffs arranged for high-speed Internet to be delivered to Home Invest's Milwaukee's office, which

exponentially increased Home Invest ability to expand. This work required Plaintiffs to negotiate with Defendants' landlord in Milwaukee which Plaintiffs did successfully for Defendants.

45.

As a further example, Plaintiffs also initiated and negotiated a deal between Home Invest and a national vendor for the vendor to provide rehab services to real estate properties on Defendants' platform. This brought additional efficiencies and costs savings to Defendants.

46.

As another example, Mr. Brechbill laid the groundwork for Defendants to enter the Tampa, Florida market, including negotiating the contract with real estate professionals in Tampa ready to service properties associated with Defendants' platform. Defendants expressed enthusiasm and gratitude for this opportunity and initially tried to move forward with it. But, to have this opportunity benefit only themselves (to Plaintiffs' exclusion), Defendants stalled until they separated themselves from Mr. Brechbill. After that, they pursued this opportunity.

**e.** ***Defendants' Fraud and Misrepresentations Come to Light***

47.

Mr. Brechbill began to be concerned about Defendants' honesty when payments they owed Plaintiffs were not made, were late or were in amounts lower than they should be.

48.

Mr. Brechbill then learned that Defendants' had lied about the way Plaintiffs' compensation would be calculated. Defendants purposefully hid from Plaintiffs the fact that Defendants would make material payments to themselves that were fraudulently booked as Home Invest "expenses."

a. Defendants did not disclose that one such "expense" was an 8% "management fee" paid directly to an entity solely owned by Defendant Berger;

b. Defendants did not disclose that another such "expense" was the payment of the personal expenses of Defendants Berger and Montgomery; and

c. Defendants did not disclose that another such "expense" was an apparent "kickback" with one of Defendants' vendors – an arrangement in which Defendants, to Plaintiffs' exclusion, would receive a "kickback."

49.

Plaintiffs also learned of other wrongful, unethical and perhaps illegal accounting practices by Defendants in connection with the enterprise, in addition to similar practices in connection with various real estate transactions, the involvement

of foreign individuals who may not be qualified to make investments in the United States and violations of usury laws.

50.

Mr. Brechbill sought to conduct an investigation of these misstatements and made inquiries to Defendants' accountant. Defendants' accountant advised Mr. Brechbill that he (the accountant) was not permitted to share certain financial documents or reports with him.

51.

Additional, Defendants made a material misrepresentation in the text of the License Agreement.

52.

The License Agreement has a defined and agreed-to Effective Date of June 15, 2017.

53.

Thus, Home Invest Technologies represented and warranted that as of June 15, 2017, "it is a duly organized, validly existing and in good standing as a corporation or other entity under the Laws of the jurisdiction of its incorporation or other organization." (License Agreement Section 12.1(a)).

54.

However, Home Invest Technologies, LLC did not exist on June 15, 2017.

Rather, it was formed on June 27, 2017:



55.

Therefore, Defendants materially breached this representation and warranty in the License Agreement.

56.

Furthermore, the "whereas" clauses of the Consulting Agreement show that the Consulting Agreement and License Agreement are inexorably intertwined:

> WHEREAS, contemporaneously with the execution and delivery of this Agreement, the Company and Consultant have entered into a software license agreement on the same date hereof (the "Software License Agreement"), pursuant to which Consultant and SFR have licensed to the Company the [PMS] Software (the "License"); and

> WHEREAS, in connection with the License, the Company desires to retain Consultant to develop a new property management software application of the [PMS] Software to be owned by the Company, and Consultant desires to provide such services to the Company, pursuant to the terms of this Agreement.

(Consulting Agreement, p. 1).

### 57.

This is not merely a technical issue. Plaintiffs would not have entered into a business arrangement with an entity that did not yet exist. Furthermore, knowing that Defendants were lying about this would have caused Plaintiffs to increase their level of due diligence.

### 58.

Defendants have acted deceptively with respect to the current relationship between Plaintiffs and Defendants.

#### f.    *Defendants Terminated or At Least Constructively Terminated Plaintiffs*

### 59.

In August 2017, Defendants terminate or at least constructively terminated their relationship with Plaintiffs.

### 60.

This occurred when Mr. Brechbill confronted Defendants about the misrepresentations and fraudulent statements they made to him.

### 61.

Defendants' response was essentially, we are not going to pay you according to the Agreements – we are going to pay you what we want to pay you.

62.

Knowing that Defendants had fraudulently induced Plaintiffs to enter the Agreements, lied to Plaintiffs while the Agreements were in place and told Plaintiffs that, in no uncertain terms, they would not abide by the Agreements, Plaintiffs stopped providing consulting services to Defendants.

63.

Continuing their deceptive, fraudulent and dishonest conduct, Defendants have continued to use Plaintiffs' registered source code in violation of the United States Copyright Act.

64.

Defendants have also continued to allow their customers to use, access and make reproductions of the PMS source code.

65.

Defendants have also prepared and are continuing to prepare more source code and software that derives from the PMS source code.

66.

The Defendants, including the Doe Defendants, have combined in a common scheme, plan or design to accomplish by concert an unlawful purpose, to accomplish

a purpose not in itself unlawful by unlawful means or to accomplish an unlawful purpose by unlawful means.

67.

Based on the facts alleged in this Complaint, including the character of the acts taken by the Defendants and the relationship between them, and other facts and circumstances revealing concerted action between and among them, they are conspirators with each other and against the Plaintiffs, and acted as one another's agents.

68.

The conspiracy between the Defendants aggravates the wrongs complained of by Plaintiffs in this action and entitles Plaintiffs to recover against any Defendant for the actions of any other Defendant.

## **Count One – Fraud in the Inducement and Rescission**

69.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

70.

As described above, prior to the Agreements being entered, Defendants lied to Plaintiffs about how Plaintiffs' compensation would be calculated. More

specifically, Defendants withheld the material information and made false statements, including those described in Paragraph 49.

71.

When Defendants Berger and Montgomery withheld material information from Plaintiffs and made material misstatements to Plaintiffs, they were doing so for their own benefit and with actual or apparent authority of the corporate Defendants.

72.

Defendants knew that the information withheld was material because that information would cause Plaintiffs to realize significantly less money from this enterprise. Defendants also knew that they told Plaintiffs the withheld information, Plaintiffs would not have entered the Agreements.

73.

Defendants also knew that their statements were false because they knew that Plaintiffs' compensation would not be calculated in the way Defendants had described to Plaintiffs.

74.

Because Defendants initially appeared credible and initially appeared to have legitimate and legal operations, Plaintiffs justifiably relied on the representations by entering into the Agreements.

75.

Had Plaintiffs been aware of the information that Defendants withheld, Plaintiffs would not have entered into any of the Agreements. And had Plaintiffs been aware of the falseness of Defendants' statements, Plaintiffs would not have entered into any of the Agreements.

76.

Plaintiffs have been damaged by Defendants' conduct. More specifically, Plaintiffs have not been paid money Defendants owe them, Defendants, and their customers, are continuing to use Plaintiffs' registered source code without compensation to Plaintiffs, Plaintiffs have paid expenses Plaintiffs incurred on behalf of Defendants for which Defendants have refused to pay or reimburse, Plaintiffs have lost business opportunities and Plaintiffs have lost a massive amount of time for which they have not been compensated.

77.

Plaintiffs were fraudulently induced into entering the Agreements. Therefore, the Agreements should be rescinded.

78.

As part of such rescission, Plaintiffs seek an accounting with respect to what amounts Defendants should pay either or both Plaintiffs.

79.

As an alternative remedy, Plaintiffs seek damages in an amount to be proven at trial but, pursuant to the terms of the license agreement, to not less than $280,000.00 for each year Defendants use Plaintiffs' source code.

## Count Two: Breach of Contract

80.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

81.

By reason of the foregoing allegations, Defendants have breached their contractual obligations to Plaintiffs.

82.

In addition to money damages for the breaches, the agreements should be rescinded.

83.

As part of such rescission, Plaintiffs seek an accounting with respect to what amounts Defendants should pay either or both Plaintiffs.

## Count Three: Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), And Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

84.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

85.

Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business, which operated as a fraud and deceit upon Plaintiffs; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to deceive the Plaintiffs.

86.

Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the statements and documents described above, which were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Defendants' structure and finances.

87.

Plaintiffs relied on the statements, which reliance was justifiable and reasonable.

88.

By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff s suffered damages in connection with its investment decision, upon the disclosure that the Company had been disseminating false statements to him.

### **Count Four – Declaratory Relief as to Defendants' Claim of a License**

90.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

91.

Declaratory Relief is sought under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and 17 U.S.C. § 501, *et seq.* (Copyright Act).

92.

There is a real and actual controversy between Plaintiffs and Defendants and at least one Defendants regarding the existence of a license for Defendants to continue to use the PMS source code and platform. Plaintiffs, on the one hand, claim no license exists, while Defendants contend that one does.

93.

Furthermore, the license that Defendants' contend exists purports to allow Defendants to license the PMS source code and platform to others.

94.

Thus, the controversy between the parties is real and substantial and demands specific relief through a decree of a conclusive character.

95.

Plaintiffs are entitled to declaratory judgment that Defendants do not have a license to use the PMS source code or platform.

## **Count Five – Copyright Infringement**

96.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

97.

Relief is sought for copyright infringement under 17 U.S.C. Section 501, *et seq.*

98.

SFR Software is the sole owner of the PMS source code, of Registration No. TX0008406394 and of the pending copyright registration application for Version 1.1 of the PMS source code.

99.

Defendants, including the individual principals, have infringed the copyrights in the PMS source code by advertising, marketing, installing, offering, and/or distributing infringing materials in the United States of America without approval or authorization from SFR Software.

100.

The infringement by Defendants is ongoing.

101.

The corporate Defendants are violating the exclusive rights given to SFR Software under 17 U.S.C. § 106(1) by reproducing the PMS source code so that Defendants and their customers can use that source code.

102.

The corporate Defendants are violating the exclusive rights given to SFR Software under 17 U.S.C. § 106(2) by preparing derivative works based on PMS source code.

103.

The corporate Defendants are violating the exclusive rights given to SFR Software under 17 U.S.C. § 106(3) by preparing distributing copies of the PMS source code to others, including to their customers.

104.

The individual Defendants are equally liable for these acts of infringement because they are in position to control, direct or stop the infringing actions of the other Defendants.

105.

As a result of their wrongful conduct, Defendants are liable for copyright infringement and SFR Software is entitled to recover damages, which include any and all profits Defendants have made as a result of their wrongful conduct.

106.

Alternatively, SFR Software is entitled to statutory damages under 17 U.S.C. Section 504(c).

107.

In addition, for the reasons set forth above, the award of statutory damages should be enhanced in accordance with 17 U.S.C. Section 504(c)(2).

108.

Plaintiffs are also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the copyrights are unique and valuable property which have no readily determinable market value, (b) Defendants' infringement harms Plaintiffs such that they could not be made whole by any monetary award,

and (c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

109.

Plaintiffs are also entitled to recover its attorneys' fees and costs of suit. 17 U.S.C. § 505.

### Count Six – Contributory Copyright Infringement

110.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

111.

At all times relevant herein, Defendants, including the individual principals, had the right and ability to control and/or stop their customers' use of the PMS source code but Defendants decided not to control or stop it.

112.

As a direct and proximate result of such decisions, Defendants' customers continue to access, use, reproduce and distribute the PMS source code.

113.

At all times relevant herein, Defendants derived substantial financial benefit from infringement of the copyrights by their customers through payments from customers to Defendants.

114.

Defendants acted with willful blindness to and in reckless disregard of these registered copyrights.

115.

As a result of their wrongful conduct, Defendants are liable for vicarious copyright infringement.

116.

SFR Software has suffered damages and is entitled to recover damages, which include any and all profits Defendants have made as a result of their wrongful conduct. Alternatively, SFR Software is entitled to statutory damages under 17 U.S.C. § 504(c).

117.

In addition, for the reasons set forth above, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

**Count Seven - Contributory Copyright Infringement**

118.

Plaintiffs incorporate by references the preceding allegations of this Complaint as if they were fully stated in this paragraph.

119.

Copyright infringement takes place every time Defendants or one of their customers (the Doe Defendants) access and use the PMS source code.

120.

By allowing their customers access to and use of the PMS source code, Defendants are knowingly inducing, causing, and materially contributing to further infringement of SFR Software's copyright in the source code.

121.

Each customer's access and use constitutes a separate and distinct act of direct copyright infringement.

122.

As a result, Defendants are liable to SFR Software for contributory copyright infringement. SFR Software has suffered damages and is entitled to recover damages, which include any and all profits Defendants have made as a result of their wrongful conduct. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c).

123.

In addition, for the reasons set forth above, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

124.

SFR Software is also entitled to recover its attorneys' fees and costs of suit.

## Count Eight – Injunctive Relief

### 125.

Plaintiffs are also entitled to injunctive relief pursuant to 17 U.S.C. Section 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the copyrights are unique and valuable property which have no readily determinable market value, (b) Defendants' infringement harms Plaintiffs such that they could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

### 126.

Plaintiffs also entitled to recover its attorneys' fees and costs of suit. 17 U.S.C. § 505.

## Jury Demand

### 127.

Plaintiffs requests a trial by jury for all issues raised in this Complaint, as it may be amended, and in any answer or counterclaim that are so triable.

## Prayer for Relief

### 128.

Plaintiffs respectfully request judgment as follows:

(1) That the Court enter a declaratory judgment that Defendants have no license to use the PMS source code, software or any other parts of the PMS platform;

(2) That the Court enter a judgment against Defendants: (a) that Defendants have infringed the copyrights in the PMS source code and (b) that the infringement was committed, at a minimum, with willful blindness and/or reckless disregard;

(3) That the Court enter a judgment against Defendants: (a) that Defendants have contributorily infringed the copyrights in the PMS source code and (b) that the such infringement was willful;

(5) That the Court issue injunctive relief against Defendants, and that Defendants, and all others in active concert or participation with Defendants, be enjoined and restrained from imitating, copying, or making any other infringing use or infringing distribution of the PMS source code;

(6) That the Court order Defendants to pay Plaintiffs damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or alternatively, enhanced statutory damages pursuant to 17 U.S.C. § 504(c), and 17 U.S.C. § 504(c)(2);

(7) That the Court order Defendants to pay to Plaintiffs both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and

(8) That the Court grant to Plaintiffs such other and additional relief as is just and proper.

Dated: October 10, 2017                      Respectfully submitted,

/s/ Jeffrey T. Norberg

Richard B. Biagi
Illinois Bar No. 6274572
Jeffrey T. Norberg
Illinois Bar No. 6315012
**NEAL & McDEVITT, LLC**
1776 Ash Street
Northfield, Illinois 60093
Telephone:    (847) 441-9100
Facsimile:    (847) 441-0911

**LILENFELD PC**

David M. Lilenfeld
Georgia Bar No. 452399
Kaitlyn A. Dalton
Georgia Bar No. 431935
3379 Peachtree Road NE
Suite 980
Atlanta, Georgia 30326
telephone (404) 201-2520
David@Lilenfeld.com
Kaitlyn@Lilenfeld.com

Pro Hac Vice Forthcoming
Attorneys for Plaintiffs