**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COLIN BRECHBILL and SFR SOFTWARE SOLUTIONS LLC, | ) ) | |
| | ) | Case No. 17-cv-7313 |
| Plaintiffs, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| HOME INVEST LLC, HOME INVEST OPERATIONS LLC, HOME INVEST TECHNOLOGIES LLC, DRAGAN BERGER, NATE ARMSTRONG, DOE ENTITIES 1–10, and DOE INDIVIDUALS 11–20, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Colin Brechbill and SFR Software Solutions LLC ("Plaintiffs") filed this action against Defendants Home Invest LLC, Home Invest Operations LLC, Home Invest Technologies LLC, Dragan Berger, and Nate Armstrong ("Defendants"), as well as various Doe defendants, bringing claims for fraud in the inducement and rescission (Count I), breach of contract (Count II), securities fraud (Count III), declaratory relief as to Defendants' claim of a license (Count IV), direct and contributory copyright infringement (Counts V–VII), and injunctive relief (Count VIII). Currently before the Court is Defendants' motion [33] to dismiss all claims in the Amended Complaint. For the reasons stated below, Defendants' motion [33] is granted in part and denied in part. The motion is denied with respect to Count II, and Plaintiffs may proceed with their breach of contract claim against Home Invest LLC, Home Invest Operations LLC, and Home Invest Technologies LLC. The motion is otherwise granted, and Counts I, III–VIII in the Amended Complaint are dismissed. Plaintiffs are given until October 12, 2018 to file an amended complaint

regarding the dismissed claims consistent with this opinion if they choose to do so. This case is set for further status on October 23, 2018 at 9:00 a.m.

## I.   Background[1]

Plaintiff Colin Brechbill has created several proprietary technologies designed to increase the operational efficiency of property managers in the single-family rental space. Specific to this lawsuit, Brechbill developed a proprietary property management software (the "PMS") that helps improve the operations of scaled property management operators. Plaintiff SFR Software Solutions LLC ("SFR") is the owner of the source code, software, and related technologies that drive the PMS. [31, ¶¶ 20–22.] Versions 1.0 and 1.1 of the PMS are both registered with the United States Copyright Office, as Registration Nos. TX-8-406-394 and TX-8-451-401 respectively. [*Id.* ¶¶ 25–26.]

Defendant Home Invest LLC is the parent company of Defendants Home Invest Operations LLC and Home Invest Technologies LLC, along with other non-party Home Invest entities (together, "Home Invest"). Home Invest is a full service real estate investment company, offering a variety of real estate-related financial and investment services. [*Id.* ¶¶ 16, 18–19.] The amended complaint contains no allegations regarding Defendant Berger's and Defendant Armstrong's relationships to Home Invest beyond their role in negotiating the three contracts that Plaintiffs eventually signed with various Home Invest entities. [*Id.* ¶ 30.] These three contracts (discussed below) do reflect that Defendant Armstrong is a principal of Defendant Home Invest LLC and signed the three contracts in that capacity.

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In May 2017, an intermediary asked Brechbill to reach out to Defendants to explore the possibility of working together. Specifically, Defendants were interested in licensing the PMS platform for their business and in hiring Brechbill as a consultant to help implement it. [*Id.* ¶¶ 27–29.] The parties began negotiating a potential business relationship, with Brechbill on one side and Defendants Berger and Armstrong on the other. During these negotiations, the parties discussed what Defendants would pay for use of the PMS platform and Brechbill's consulting services. They also discussed how this compensation would be calculated. Brechbill communicated to Defendants in these discussions that Plaintiffs would not enter into any agreements related to their platform or services unless Defendants provided three specific types of compensation: monetary compensation, periodic profit sharing, and equity in the enterprise. [*Id.* ¶¶ 30–32.]

As a result of these discussions, Plaintiffs entered into three separate agreements with certain Defendants.[2] First, Defendant Home Invest Operations LLC and Brechbill entered into a Consulting and Software Development Agreement (the "Consulting Agreement"), dated July 7, 2017, and made effective as of June 15, 2017. [*Id.* ¶ 34; 31, Ex. C.] The Consulting Agreement provides that Brechbill will "implement" the PMS platform for Home Invest, meaning it would "install, integrate and make the software fully functional for the Company's day-to-day operations," and improve Home Invest's operational and financial profitability in other ways. [31, Ex. C, § 1 & Ex. A.] In return, the Consulting Agreement provides that Home Invest Operations LLC will pay Brechbill a $10,000 per month services fee, reimburse Brechbill for certain expenses

---

[2] All three agreements are attached as exhibits to the Amended Complaint. [See 31, Exs. C–E.] The Court may therefore consider them in ruling on Defendants' motion to dismiss. "In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents, without converting the motion into one for summary judgment." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015) (citing Fed. R. Civ. P. 10(c)).

up to $3,500, place Brechbill in a "profit sharing pool" for net profits of Home Invest Operations LLC's operating divisions, and grant Brechbill 15,790 non-voting Class B Common Units of Home Invest LLC.  [31, ¶¶ 36–39; 31, Ex. C §§ 2(a)–(d).]

These Home Invest units are the subject of the second relevant agreement, a Restricted Unit Award Agreement ("Unit Agreement") between Brechbill and Home Invest LLC made effective as of June 15, 2017.  [31, ¶ 39; 31, Ex. E.]  This agreement grants Brechbill the units referenced in the Consulting Agreement in two tranches on specific grant dates (the second and third anniversary of the Unit Agreement's effective date).  [31, Ex. E § 2.]

Finally, both Brechbill and SFR entered into a Software License Agreement (the "License Agreement") with Home Invest Technologies LLC dated July 7, 2017 and made effective as of June 15, 2017.  [31, ¶ 35; 31, Ex. D.]  In the License Agreement, Plaintiffs grant to Home Invest Technologies LLC and its affiliates the right and license to use the PMS.  This license is "non-exclusive, royalty-free, perpetual, irrevocable, freely transferable, freely sublicensable and fully paid up upon payment of the License Fee."  [31, Ex. D § 2.1.]  The "License Fee" provision states that Home Invest will agree to enter into the Consulting Agreement with Brechbill in lieu of paying a separate fee (subject to certain exceptions if the Consulting Agreement is terminated in specific ways).  [Id. § 8.]  The License Agreement also specifically grants Home Invest Technologies LLC and its affiliates the rights to run as many copies of the PMS as necessary, to have authorized users access and use the PMS by any means necessary, and to reverse engineer the PMS and make modifications to it.  [Id. § 2.2.]

After these three agreements were signed, Plaintiffs began to adapt the PMS platform for Defendants' business.  By July 5, 2017, Plaintiffs had set-up, configured, and deployed the finished software product.  [31, ¶ 40.]  According to Plaintiffs, their involvement increased Defendants'

revenue and reduced the overhead Defendants needed to operate their platform. Plaintiffs performed other work for Defendants, including the implementation of an interactive voice response system and a self-showing lock box system that helped scale the Home Invest business. [*Id.* ¶¶ 41–43.] Plaintiffs also improved Defendants' platform and operations in other ways beyond what the Agreements required, including negotiating with Defendants' Milwaukee landlord to have high-speed Internet delivered to their offices and negotiating with Defendants' vendors to bring additional efficiencies and savings to their business. [*Id.* ¶¶ 44–46.]

However, Brechbill became concerned about this arrangement when payments that Defendants owed to Plaintiffs were not made, were late, or were made in amounts lower than they should have been. [*Id.* ¶ 47.] Plaintiffs also allege that Brechbill learned at some point that Defendants had lied about how Plaintiffs' compensation would be calculated by hiding the fact that Defendants would make material payments to themselves that were fraudulently booked as Home Invest expenses (thus reducing the amount of money distributed to Plaintiffs pursuant to the Agreements). Specifically, Plaintiffs allege Defendants failed to disclose that (1) one such expense was an 8 percent management fee paid directly to an entity solely owned by Berger; (2) another such expense was the payment of Berger's and Armstrong's personal expenses; and (3) a third such expense was an apparent kickback to one of Defendants vendors. [*Id.* ¶ 48.] Plaintiffs further allege that Defendants told Brechbill after he began his work that no funds had been distributed by Home Invest to Berger or Armstrong, but Defendants knew that this was false because such funds had in fact been distributed to these Defendants. [*Id.*]

Plaintiffs allege that Defendants also made a material misrepresentation in the License Agreement. The License Agreement contains a mutual representation and warranty that each party "is [ ] duly organized, validly existing and in good standing as a corporation or other entity under

the Laws of the jurisdiction of its incorporation or other organization." [31, Ex. D, § 12.1(a).] The License Agreement was entered into on July 7, 2017 with an effective date of June 15, 2017; however, Home Invest Technologies LLC was not incorporated until June 27, 2017. [31, ¶¶ 51–54.] According to Plaintiffs, they would not have entered into a business arrangement with an entity that did not yet exist, and they also would have increased their due diligence of Defendants had they known that Home Invest Technologies LLC did not yet exist on the License Agreement's effective date. [*Id.* ¶ 57.]

In August 2017, Brechbill confronted Defendants regarding their misrepresentations. According to Plaintiffs, "Defendants' response was essentially, we are not going to pay you according to the Agreements—we are going to pay you what we want to pay you." [*Id.* ¶ 61.] Plaintiffs then stopped providing consulting services to Defendants because, Plaintiffs allege, Defendants had fraudulently induced them to enter into the three Agreements, they had lied to Plaintiffs while the Agreements were in place, and they had told Plaintiffs that they would not abide by the Agreements. [*Id.* ¶ 62.] However, Defendants are continuing to use Plaintiffs' registered source code and to allow their customers to use it, and they have prepared more source code derived from the PMS original code. [*Id.* ¶¶ 63–65.]

Plaintiffs filed their initial complaint against Defendants relating to these events on October 10, 2017. [See 1.] Defendants filed a motion to dismiss this initial complaint in its entirety for failure to state a claim. [See 27.] When Plaintiffs were given leave to file an amended complaint, the motion to dismiss was denied without prejudice. [See 30.] Plaintiffs filed their amended complaint, bringing claims against Defendants for fraud in the inducement and rescission (Count I); breach of contract (Count II); securities fraud (Count III); declaratory relief as to Defendants' claim of a license (Count IV); copyright infringement (Count V); contributory copyright

infringement (Counts VI–VII); and injunctive relief (Count VIII). [See 31.] Defendants then filed the instant motion to dismiss the amended complaint, arguing that it still fails to state a claim on which relief can be granted. [See 33.] Plaintiffs filed a response [35], and Defendants have filed a reply [36].

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Fraud allegations in a complaint are subject to Rule 9(b)'s pleading requirement. Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard

of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b) specifically requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at *5 (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

## III.   Analysis

Defendants argue that all of the claims in Plaintiffs' amended complaint must be dismissed for failure to state a claim upon which relief can be granted.

### A.     Fraud in the Inducement (Count I)

In Count I, Plaintiffs bring a claim for fraud in the inducement and rescission. [31, ¶¶ 69–79.] Plaintiffs allege that before entering into the three Agreements, Defendants (specifically Berger and Armstrong, with the actual or apparent authority of the three corporate Defendants) withheld material information and made false statements about how their compensation would be calculated. According to Plaintiffs, Defendants knew that these misstatements were material and that they were false. Plaintiffs allege that they justifiably relied on these misrepresentations and, if they had been aware of their falsity or of the information Defendants withheld, Plaintiffs would not have entered into any of the Agreements. Plaintiffs also allege they have been damaged by Defendants' conduct because they have not been paid or reimbursed by Defendants as required, and Defendants are continuing to use Plaintiffs' registered source code without compensation. Plaintiffs seek either rescission of the Agreements or damages.

Defendants argue that Count I fails to state a claim for fraudulent inducement because (1) Plaintiffs' allegations of affirmative false statements are insufficient to show fraud, (2) Plaintiffs' allegations of fraudulent omissions do not satisfy Rule 9(b)'s particularity requirement and do not plead the existence of a duty to disclose, and (3) Plaintiffs fail to allege actual economic damage resulting from reliance on the fraudulent statements or omissions. [34, 5–9.]

To state a claim for fraudulent inducement in Illinois,[3] a plaintiff must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003); see also *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014). As with other types of fraud claims, fraudulent inducement claims must be pled with particularity pursuant to Rule 9(b). See *Lesaint Logistics, LLC v. Electra Bicycle Co., LLC*, 146 F. Supp. 3d 972, 980 (N.D. Ill. 2015).

Three categories of misrepresentations alleged in the Amended Complaint form the basis of Count I. First, Plaintiffs allege that Defendants failed to disclose that certain of Defendants' payments to themselves would be booked as Home Invest expenses, including a management fee to a company owned by Berger, payment of personal expenses of Berger and Armstrong, and a "kickback" to one of Defendants' vendors. [31, ¶¶ 48(a)–(c).] Second, Plaintiffs allege that Defendants affirmatively lied to Plaintiffs about the way their compensation would be calculated

---

[3] Both parties have cited to Illinois law in their briefing, and neither party has challenged the application of Illinois to Plaintiffs' fraudulent inducement claims. [See 34; 35.] The Court will therefore apply Illinois law. See *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) (where neither party raises a conflicts of law issue, "the applicable law is that of the state in which the federal court sits").

and falsely stated to Plaintiffs after they began their work that no funds had been distributed to Berger or Armstrong or the entities that they control. [*Id.* ¶ 48(d).] Finally, Plaintiffs allege that Home Invest Technologies LLC falsely represented and warranted in the License Agreement that it was a "validly existing" corporation at the time it entered into the agreement. [*Id.* ¶¶ 51–55.]

As an initial matter, the allegations in ¶¶ 48(a), 48(b), and 48(c) regarding Defendants' failure to disclose certain expenses are insufficient to state a claim for fraud. In order to state a fraud claim based on the omission of a material fact rather than an affirmative misrepresentation, "it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak." *Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 855 (N.D. Ill. 2017) (quoting *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010)); see also *Spaulding v. Abbott Labs.*, 2010 WL 4822894, at *8 (N.D. Ill. Nov. 22, 2010) ("A duty to speak arises only where there is a special or fiduciary relationship between the parties.") (citations omitted); *Aeroground, Inc. v. CenterPoint Prop. Tr.*, 2010 WL 2169493, at *4 (N.D. Ill. May 27, 2010) ("The duty to disclose arises only when a fiduciary relationship is present or when the defendant's acts contribute to the plaintiff's misapprehension and the defendant intentionally fails to correct the plaintiff.").

Plaintiffs have not alleged any facts to support an inference that any Defendant had a duty to speak based on the relationship between these parties. The amended complaint describes only a set of contracts that were negotiated at arms' length. [31, ¶¶ 27–39.] In Illinois, there is no duty to disclose in that situation. See *Spaulding*, 2010 WL 4822894, at *8 (no duty to disclose where agreement is the product of a typical arms' length business relationship); *Aeroground*, 2010 WL 2169493, at *4 ("Parties to a contract are not each other's fiduciaries.") (quoting *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E. 2d 911, 915 (Ill. App. Ct. 2004)); *Razdan v.*

*Gen. Motors Corp.*, 979 F. Supp. 755, 758 (N.D. Ill. 1997) (fiduciary duty did not arise during employment contract negotiations between employer and employee); see also *Benson v. Stafford*, 941 N.E.2d 386, 397–98 (Ill. App. Ct. 2010) ("The mere fact that the parties have engaged in business transactions or have a contractual relationship is not itself sufficient to establish a fiduciary relationship."). Plaintiffs do not allege that there were any special circumstances regarding their relationship with Defendants during the negotiations over the Agreements that would support a duty to disclose the information about expenses that was allegedly withheld during pre-contract discussions.

Plaintiffs argue that the fraudulent inducement claim based on Defendants' alleged misrepresentations can survive because a duty to speak results when silence accompanies deceptive conduct. [35, at 5.] Plaintiffs cite *Mitchell v. Skubiak*, 618 N.E.2d 1013 (Ill. App. Ct. 1993), in support of this argument. As Defendants point out, though, *Mitchell* only stands for the proposition that silence in combination with deceptive conduct results in "active concealment" that may create a duty to disclose. *Id.* at 1017. In *Mitchell*, the plaintiffs purchasing a house from defendants inquired about a specific defect they noticed on a walkthrough of the house, and upon that inquiry "a duty to speak arose on behalf of the defendants." *Id.* at 1018; see also *Manning v. Ashland Chem. Co.*, 498 F. Supp. 1382, 1383 (N.D. Ill. 1980) ("Although it is clear that silence or concealment may constitute fraud, it does so only when the silent party had an opportunity and duty to speak."). Plaintiffs do not allege that they specifically inquired about the types of expenses that Home Invest would book before paying Plaintiffs and that, in response, Berger and Armstrong misrepresented how this issue would be handled. Plaintiffs have thus failed to allege that any Defendant owed a duty to disclose this information based on the reasoning in *Mitchell*.

Plaintiffs do allege that Brechbill discussed compensation issues with Defendants and told Defendants that Plaintiffs would not agree to enter into any Agreements unless they received certain forms of compensation. [31, ¶ 31.] But that does not bridge the gap in Plaintiffs' allegations. Even accepting that the parties generally discussed three buckets of compensation listed above, Plaintiffs have not sufficiently alleged any facts demonstrating that Brechbill asked about the expense issue and that in response Defendants misrepresented or omitted something, or that a duty to disclose on behalf of Defendants otherwise arose during these contractual negotiations. See *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 946–47 (N.D. Ill. 2013) (granting motion to dismiss fraud claims where plaintiff failed to allege facts plausibly suggesting that parties to contract had special relationship that raised duty to speak); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768 (N.D. Ill. 2011) (dismissing fraudulent concealment claim where parties engaged in arms'-length transaction: parties in this situation had no duty to speak under Illinois law, and plaintiff had not alleged such a duty based on other circumstances).

The amended complaint also alleges that Defendants made affirmative misrepresentations regarding Plaintiffs' compensation under the Agreements. Specifically, Plaintiffs state that Defendants "lied about the way Plaintiffs' compensation would be calculated." [31, ¶ 48.] This allegation fails to plead the alleged misrepresentation with enough particularity to satisfy Rule 9(b). There is no indication of when this lie was perpetrated, which Defendant was involved, or how any of Defendants' statements regarding the calculation of Plaintiffs' compensation were false as compared to how these calculations were actually carried out by Defendants. *Blankenship*, 2015 WL 5895416, at *7.

Plaintiffs give slightly more content to this claim with the allegation that, after they began working, "Defendants told Mr. Brechbill that no funds had been distributed by Home Invest to Mr. Berger or to Mr. Armstrong (or entities they own and/or control), but Defendants knew that was not true as funds had been distributed to Defendants (to Plaintiffs' exclusion)." [31, ¶ 48(d).] This allegation contains further specifics, but not many: Plaintiffs do not allege which Defendant made this statement, for example, and therefore it does not meet the pleading requirements of Rule 9(b). But this allegation also suffers from a more fundamental problem. As Defendants point out, Plaintiffs specify that this statement was only made after work under the Agreement had already commenced, and Plaintiffs allege elsewhere in the amended complaint that they began to work "[a]fter the Agreements were signed." [31, ¶ 40.] Those allegations indicate that Plaintiffs cannot meet the fourth element of a fraudulent inducement claim: action by the other party in reliance on the truth of the statement. *Hoseman*, 322 F.3d at 476. Plaintiffs cannot claim that they were fraudulently induced to enter into any agreements with Defendants on the basis of a statement that was not made until after the Agreements were signed and operative. See *Matland v. Loyola Univ. of Chi.*, 2012 WL 5949067, at *5 (N.D. Ill. Nov. 27, 2012) (dismissing fraudulent misrepresentation claim because plaintiff had not pled reasonable reliance); *Arlington Fin. Corp. v. Ben Franklin Bank of Ill.*, 1999 WL 286080, at *3–4 (N.D. Ill. Apr. 29, 1999) (dismissing fraudulent inducement counterclaim where plaintiff failed to specify any misrepresentations made prior to contract that could have induced plaintiff to enter into it).

Finally, Plaintiffs allege that Defendants made a material misrepresentation in the text of the License Agreement when it represented and warranted that it was "duly organized, validly existing and in good standing as a corporation" as of the date of the agreement. [31, ¶ 53.] This misrepresentation also cannot support a fraudulent inducement claim. Plaintiffs have alleged that

the License Agreement contains a false statement—Home Invest Technologies validly existed by a certain date when it did not—and Plaintiffs have also alleged that they relied on this false statement when entering into the License Agreement.[4] However, Plaintiffs have not alleged that Home Invest Technologies made this statement in the License Agreement with either an intent to induce them to enter into the Agreement or with knowledge that it was false at the time it was made. Both are elements of a fraud claim. See *Santore v. Swaminathan*, 2018 WL 1124414, at *4 (N.D. Ill. Mar. 1, 2018) ("To properly allege fraud rather than simple breach of contract, the complaint must contain allegations demonstrating that [defendant] never intended to perform his obligations under the Operating Agreement."). Because Plaintiffs have not alleged any facts from which the Court could infer that Defendants intended Plaintiffs to act based on this misstatement, the misstatement cannot support a claim of fraudulent inducement. See *O'Donoghue v. Inland Bank & Tr.*, 2017 WL 5891199, at *8 (N.D. Ill. Nov. 27, 2017) (dismissing fraudulent inducement claim that was based on the breach of a warranty in a merger agreement because there were no allegations indicating that defendant did not intend to comply with the warranty when it was entered); see also *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (summary judgment on fraud claim was appropriate where plaintiff "failed to identify any fraudulent act distinct from the alleged breach of contract").

---

[4] Defendants argue that this statement was not actually false because, although the License Agreement is effective as of June 15, 2017, it was not executed until July 7, 2017, at which point Home Invest Technologies LLC was incorporated in Delaware. [34, at 5–6.] However, in Illinois, "[i]t is elementary that ordinarily a contract speaks from the day of its date, regardless of when it was executed and delivered." *Janowiak v. Tiesi*, 932 N.E.2d 569, 577 (Ill. App. Ct. 2010) (internal quotation marks and citation omitted); see also *Grubb & Ellis Co. v. Bradley Real Estate Tr.*, 909 F.2d 1050, 1054 (7th Cir. 1990) ("[C]ontractual terms may be effective for a period *before* the contract is executed, so long as such coverage is clear from the face of the contract."). Therefore, the effective date of the License Agreement, rather than the date it was signed, controls. The Court notes, however, that this difference may not be material, as under Delaware law "if [a] subsequently formed corporation expressly adopts the preincorporation agreement or implicitly adopts it by accepting its benefits with knowledge of its terms, the corporation is bound by it." *Lorillard Tobacco Co. v. Am. Legacy Foundation*, 903 A.2d 728, 745 (Del. 2006).

Because the Court concludes that none of the misstatements or omissions alleged in the amended complaint are sufficient to state a claim for fraudulent inducement, there is no need to address Defendants' argument that Plaintiffs have failed to allege economic damage resulting from reliance. Defendants' motion with respect to the fraudulent inducement claim is granted, and Count I of Plaintiffs' amended complaint is dismissed.

## B.  Breach of Contract (Count II)

In Count II, Plaintiffs brings a claim for breach of contract against all Defendants, alleging that Plaintiffs performed their obligations, Defendants breached their obligations, and these breaches have damaged Plaintiffs. [31, ¶¶ 80–83.] Defendants argue that the breach of contract claim must be dismissed because Plaintiffs fail to allege facts establishing either their own performance under any of the Agreements or a breach by Defendants of any Agreements. [34, at 11–13.]

To state a claim for breach of contract under Illinois law,[5] Plaintiffs must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)); see also *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

---

[5] Neither party has raised a choice of law issue with respect to the breach of contract claim, and both parties cite to the elements of a breach of contract claim in Illinois. The Consulting Agreement and the License Agreement each contain Illinois choice of law provisions. [See 31, Ex. C § 12(a); *id.* Ex. D § 14.13.] The Unit Agreement contains a Delaware choice of law provision. [See *id.* Ex. E § 4(g).] The elements of a breach of contract claim in Delaware are similar to those in Illinois. See *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (to state a breach of contract claim, "the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff"). Because the parties' arguments focus on the performance and breach of the Consulting Agreement, however, the Court will apply Illinois law to the breach of contract claim.

As Defendants acknowledge, Plaintiffs have alleged the existence of three intertwined contracts: the Consulting Agreement, the Unit Agreement, and the License Agreement. Defendants first argue that Plaintiffs have faltered in pleading their own performance under any of these contracts. The Court disagrees. Plaintiffs have adequately pled that they performed under the Consulting Agreement. Pursuant to this agreement, Brechbill was responsible for implementing the PMS platform within 90 days and for otherwise improving Home Invest's operational and financial profitability. [31, Ex. A to Ex. C.] Plaintiffs allege that, after signing the three agreements with Defendants, Brechbill "promptly" began to adapt the PMS platform for Defendants and had deployed the finished software product by July 5, 2017. According to the Amended Complaint, the work that Plaintiffs performed increased Defendants' revenue and reduced their overhead costs. [31, ¶¶ 40–41.] Plaintiffs also allege that they improved Defendants' operations in other ways, including by making their phone system cheaper and more efficient, implementing a self-showing lock box system that allowed Defendants to lease more homes, bringing on third-party leasing agents at lower costs, and arranging for high-speed Internet to be delivered to Home Invest's office in Milwaukee. [*Id.* ¶¶ 42–44.] These allegations plainly satisfy Rule 8(a)'s pleading requirements. See *Bd. of Tr. of Univ. of Ill. v. Micron Tech., Inc.*, 2016 WL 9686053, at *5 (C.D. Ill. Mar. 28, 2016) (plaintiff had adequately alleged performance element of breach of contract claim where performance was easily inferred from the other allegations in the complaint); see also *Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, 2011 WL 3876947, at *11–12 (N.D. Ill. Sept. 1, 2011) (denying motion to dismiss a claim for breach of a settlement agreement where the allegations satisfied Rule 8's requirements).

Defendants argue that Plaintiffs' allegations regarding performance are deficient because setting up, configuring, and deploying the finished software product, [see 31, ¶ 40] does not meet

the express language of what Brechbill was required to do under the Consulting Agreement: "One might 'set up' and 'deploy' something, and it could fail. Miserably. Likewise, Plaintiffs could 'install' their PMS software without actually integrating it with, and making it fully functional in, Defendants' day-to-day business and operations." [34, at 12.] This is true but makes an inference in the wrong direction at this stage. When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to Plaintiffs, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [their] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Accepting Plaintiffs' allegations regarding their work as true, a reasonable inference the Court can draw in Plaintiffs' favor is that Brechbill deployed the PMS software successfully and thus performed under the Consulting Agreement.

Plaintiffs have also alleged that Defendants breached the Consulting Agreement. Plaintiffs allege that payments owed to them were not made, were late, or were in amounts lower than they should be. [31, ¶ 47.] Plaintiffs allege elsewhere in the amended complaint that Plaintiffs have not been paid money that Defendants owe them, and that Plaintiffs have paid expenses incurred on behalf of Defendants for which Defendants have refused to pay or reimburse them. [*Id.* ¶ 76.] Plaintiffs further allege that the Consulting Agreement contains specific provisions for Plaintiffs' compensation and expense reimbursement and attach the Consulting Agreement that contains these provisions. [*Id.* ¶¶ 34, 36.] Although these allegations are scattered in the amended complaint and do not specifically reference each other, Plaintiffs have clearly put Defendants on notice of the basis for their breach of contract claim. See *INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009) ("A complaint will withstand a motion to dismiss if it provides a short and plain statement of the claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with fair notice of the claim and its basis.") (internal quotation

marks and citations omitted); *Axiom Ins. Managers Agency*, 2011 WL 3876947, at *12 ("A plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim."). In contrast to the cases relied on by Defendants in their motion to dismiss, Plaintiffs have not left a "plot hole" in their breach of contract claim that would prevent it from going forward. See *Families of Spinal Muscular Atrophy v. Nationwide Children's Hosp.*, 2016 WL 4987944, at *4 (N.D. Ill. Sept. 19, 2016); see also *Bortz v. Bank of Am., N.A.*, 2016 WL 7104288, at *3–4 (N.D. Ill. Dec. 6, 2016) (dismissing breach of contract claim where plaintiffs did not plead enough facts to put defendants on fair notice of the contractual duty that was breached). Plaintiffs have specifically identified the contractual provisions that entitle them to payment and expense reimbursement, and they have alleged that Defendants failed to pay or reimburse them as required.[6] This is enough factual enhancement to proceed on a claim for breach of the Consulting Agreement at this stage.

As Defendants acknowledge in their motion to dismiss, the Consulting Agreement, the Unit Agreement, and the License Agreement are all intertwined. [34, at 11.] In fact, the Consulting Agreement specifically incorporates the License Agreement and the Unit Agreement. See [31, Ex. C § 12(g)] ("Other than the Software License Agreement and the LLC Governing Documents, the terms contained in this Agreement constitute the entire agreement of the parties with respect to the subject matter hereof."); see also [*id.* § 2(d)] (Unit Agreement included in the definition of LLC Governing Documents). Therefore, Plaintiffs can proceed with their breach of contract claim as to all three contracts at this time, as Plaintiffs have sufficiently alleged in the Amended Complaint

---

[6] Although Plaintiffs do not specify the Agreement pursuant to which they are owed money that Defendants have not paid them, a cursory review of the three Agreements attached to the Amended Complaint demonstrates that only the Consulting Agreement requires that Defendants pay money to Plaintiffs and provide any reimbursement to Plaintiffs.

and the materials attached to it that these three agreements were all part of the same transaction. [31, ¶¶ 33–39; 31, Ex. C § 12(g).]

However, to the extent that Plaintiffs intended to bring this claim against Defendants Berger and Armstrong as well, Plaintiffs have not alleged any facts from which the Court can infer that these Defendants should be personally liable for any breach of contract. Berger did not sign any of the contracts attached to the amended complaint, and Plaintiffs have not alleged the title or role Berger actually held at Home Invest. Armstrong did sign all three contracts, but he did so only in his official capacity as principal of Home Invest LLC. "The Seventh Circuit and courts in this district have rejected claims involving contracts brought against individual parties who did not sign the contract at issue in their individual capacities." *Santore*, 2018 WL 1124414, at *6 (collecting cases); see also *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000) (party who signed a contract exclusively in capacity as trustee could not take advantage of a provision of the contract while acting in his individual capacity); *Media Commc'ns, Inc. v. Multimedia, Sign Up, Inc.*, 1999 WL 1212652, at *2 (N.D. Ill. Dec. 14, 1999) (dismissing breach of contract counterclaim against counter-defendant because there were no allegations that he could be or should be personally bound by the contract). Plaintiffs have not alleged any basis for holding any defendant liable for breaches of these agreements beyond those defendants who are actually parties to the contracts. Therefore, the breach of contract claim in Count II can proceed at this time against Home Invest LLC, Home Invest Operations LLC, and Home Invest Technologies LLC, but Count II is dismissed against Defendants Berger and Armstrong. As noted at the outset, the dismissal is without prejudice and with leave to replead.

## C.    Securities Fraud (Count III)

In Count III of the Amended Complaint, Plaintiffs bring a claim against all Defendants for a violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  [See 31, ¶¶ 84–89.] Specifically, Plaintiffs allege that Defendants intentionally made various misrepresentations and omissions in connection with the purported sale of Home Invest LLC stock to Brechbill in the Unit Agreement in order to induce Plaintiffs to deliver the PMS platform.  [See 35, at 11.]  Defendants argue that Plaintiffs have failed to adequately plead all elements of their claim under the applicable heightened pleading standards of both Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  [See 34, at 13–20.]

Section 10(b) of the Act makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  "Rule 10b–5 forbids a company or an individual 'to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'"  *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) (quoting 17 C.F.R. § 240.10b–5(b)).  "The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809–10 (2011) (quoting *Matrixx Initiatives, Inc. v.*

*Siracusano*, 563 U.S. 27, 37–38 (2011)); see also *Howe v. Shchekin*, 238 F. Supp. 3d 1046, 1051 (N.D. Ill. 2017) (listing elements of securities fraud).

Because § 10b–5 claims sound in fraud, they still must comply with Rule 9(b)'s heightened pleading requirements—identifying "the party who made the alleged misrepresentation, the time, place, and content of the misrepresentation, and the method of communication of the purported misrepresentation." *Howe*, 238 F. Supp. 3d at 1052 (citing *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013)). However, the PSLRA "raise[d] the pleading standard for securities fraud claims beyond the requirements of even Rule 9(b)." *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 927 (N.D. Ill. 2015). These heightened pleading standards apply to the "misrepresentation of material fact" and "scienter" elements of Section 10(b) and Rule 10b-5 claims. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320–21 (2007). The Court is required to grant a motion to dismiss if these standards are not met. 15 U.S.C. § 78u-4(b)(3)(A).

Defendants argue that Plaintiffs have failed to adequately plead either a misrepresentation of a material fact or scienter under these heightened pleading standards. Because the Court agrees on both elements, Plaintiff's securities fraud claim in Count III must be dismissed.

Turning first to the misrepresentation element, the PSLRA requires that in any action where "the plaintiff alleges that the defendant (A) made an untrue statement of a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading," the complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(A), (B). In determining whether a statement is misleading, the Court "consider[s] the context in which the statement was made" and "must determine

'whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission.'" *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015) (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 596 (7th Cir. 2006), vacated and remanded, 551 U.S. 308 (2007)). "When alleging that Defendants omitted something, 'plaintiffs must point to a specific statement that is made misleading by [an] omission,' and offer 'specific, contradictory information' known to [Defendants] sufficient to establish that [Defendants] made any misleading statements." *Id.* (quoting *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *5 (N.D. Ill. Mar. 29, 2012)).

Plaintiffs point to the same alleged omissions and misstatements regarding their compensation that were used in support of their fraudulent inducement claim to support their securities fraud claim: (1) Defendants' failure to disclose that particular expenses would be "fraudulently" booked as Home Invest expenses and their intention not to abide by the Agreements; (2) Defendants' statements to Brechbill that no funds had been distributed by Home Invest to Berger or Armstrong when Defendants knew that was not true. [31, ¶ 48.] As with Plaintiffs' fraudulent inducement claim, none of these omissions or statements support a securities fraud claim.

First, Plaintiffs' allegations regarding Defendants' omissions about Home Invest's expenses do not identify "specific, contradictory information" sufficient to establish that Defendants' omissions were misleading such that Defendants would have to disclose this information to Plaintiffs. *Constr. Workers Pension Fund-Lake Cty.*, 114 F. Supp. 3d at 651. Plaintiffs argue that they have sufficiently pled that Defendants misrepresented Plaintiffs' payment structure and lied about the way Plaintiffs' compensation would be calculated, as evidenced by

these omissions. But even making all reasonable inferences in Plaintiffs' favor, all Plaintiffs allege in the Amended Complaint is that during their negotiations, Brechbill told Defendants that Plaintiffs would not enter any agreements unless Defendants provided monetary compensation, periodic profit sharing, and equity. [31, ¶ 32.] The parties then signed a Consulting Agreement that provided Plaintiffs with compensation, placed Brechbill in a profit sharing pool, and awarded Home Invest shares to Brechbill. [*Id.* ¶¶ 36–37.] Plaintiffs generally allege that Brechbill and Defendants had discussions about compensation prior to entering into the three agreements, but Plaintiffs do not allege that any Defendant ever discussed how Defendants would pay expenses to Home Invest entities or principals separate and apart from the arrangement with Brechbill. The amended complaint thus contains no allegations connecting the alleged omissions with any statements about Plaintiffs' compensation scheme that would explain how the failure to disclose these expenses misled Brechbill. In other words, Plaintiffs have not alleged how these purported omissions amount to lies about Plaintiffs' compensation. See *Howe*, 238 F. Supp. 3d at 1052; *In re Harley-Davidson, Inc. Secs. Litig.*, 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009) (dismissing securities fraud claim and noting that complaint lacked "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made"). Without such allegations, these omissions cannot support a securities fraud claim. *Babin v. Shchekin*, 2017 WL 403568, at *8 (N.D. Ill. Jan. 30, 2017); *Cornielsen v. Infinium Capital Holdings, LLC*, 168 F. Supp. 3d 1033, 1044 (N.D. Ill. 2016) (dismissing claim where plaintiffs did not identify with particularity "the affirmative statement that an omission renders misleading"); *Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *13 (N.D. Ill. Feb. 9, 2015) (allegation that defendant "continued to tout its sales and growth, fully knowing [its] financials were in trouble and that sales would not continue to grow" did not support securities fraud claim

because plaintiffs "do not connect this allegation to any contradictory statement" defendants made).

Plaintiffs also cannot state a securities fraud claim based on the allegation that Defendants "told Mr. Brechbill that no funds had been distributed by Home Invest to Mr. Berger or to Mr. Armstrong (or entities they own and/or control), but Defendants knew that was not true as funds had been distributed to Defendants (to Plaintiffs' exclusion)." [31, ¶ 48(d).] This allegation does not meet the requirements of Rule 9(b), much less the heightened pleading requirements of the PLSRA, as Plaintiffs do not specify which of the Defendants made this statement. "Typically, such group pleading does not satisfy Rule 9(b)'s specificity requirement." *O'Donoghue*, 2017 WL 5891199, at *5 (citing *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016)). This is especially true here, where Plaintiffs have only attributed affirmative statements to "Defendants" as a whole and provided no framework for understanding each Defendant's role in the alleged fraud. In short, Plaintiffs' securities fraud claim cannot survive because Plaintiffs have failed to adequately plead a material misrepresentation or omission by Defendants.[7]

Moreover, even if Plaintiffs had alleged a sufficient misrepresentation or omission of a material fact, Plaintiffs' securities fraud claim still would fail because the amended complaint fails to adequately plead scienter. "To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 319 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 & n.12 (1976)); see also *Pension Tr. Fund for Operating Engineers v. Kohl's*

---

[7] It is unclear whether Home Invest Technologies LLC's alleged breach of the representation and warranty in the License Agreement is also intended to serve as a basis for Plaintiffs' securities fraud claim in Count III. Even if this alleged misrepresentation was sufficient pursuant to the PSLRA's pleading standard, however, as further described below Plaintiffs' securities fraud claim must be dismissed for the independent reason that Plaintiffs have failed to plead scienter.

*Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (scienter is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false"). The PSLRA further requires a plaintiff to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A) (emphasis added). A securities fraud claim must be dismissed unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (quoting *Tellabs*, 551 U.S. at 323). "In making this determination, the allegations in the complaint 'are accepted as true and taken collectively.'" *Pension Tr. Fund for Operating Engineers*, 895 F.3d at 936 (quoting *Tellabs*, 551 U.S. at 324). Plaintiffs furthermore "must create a strong inference of scienter with respect to each individual defendant." *Pugh*, 521 F.3d at 693.

The amended complaint only contains generalized allegations that all Defendants (not any particular Defendant) "lied about the way Plaintiffs' compensation would be calculated," [31, ¶ 48]; "purposefully hid" facts from Plaintiffs, [*id.*]; "acted deceptively with respect to the current relationship between Plaintiffs and Defendants," [*id.* ¶ 58]; engaged in "deceptive fraudulent, and dishonest conduct," [*id.* ¶ 63]; and "knowingly or recklessly engaged in acts, transactions, practices, and courses of business, which operated as a fraud and deceit upon Plaintiffs," [*id.* ¶ 85]. This presents a deficiency under Rule 9(b)'s pleading standard, as Plaintiffs have not alleged which Defendant made which statement that constitutes fraud, when it was made, or how it was communicated to Plaintiffs.

And these allegations do not include enough facts to support any inference, let alone a compelling inference, that any Defendant acted with the requisite mental state in dealing with Plaintiffs' purchase of stock in Home Invest LLC. The most specific allegation regarding an intent

to deceive on Defendants' part in the Amended Complaint is that Defendants told Plaintiffs in August 2017 that they were not going to pay them according to the Agreements. [31, ¶ 61.] But Plaintiffs do not allege which Defendant made this statement, and they do not allege that Defendants never intended to pay them according to the Agreements when they were signed. See *Santore*, 2018 WL 1124414, at *4 ("[A] party claiming fraud must prove fraudulent intent at the time of contract execution; evidence of a subsequent, willful breach cannot sustain the claim.") (quoting *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016)).

Even taken collectively, the allegations that Defendants as a whole generally lied or acted deceptively do not give rise to a strong inference of scienter for any Defendant that is "at least as compelling" as any opposing inference one could draw. Plaintiffs continually assert that Defendants acted deceptively, but they do not allege any facts that would demonstrate how they were deceived or that any specific Defendant intended that deception in connection with the sale to Brechbill of Home Invest stock. Plaintiffs thus cannot support a securities fraud claim. See *Pension Tr. Fund for Operating Engineers*, 895 F.3d at 939 (affirming dismissal of securities fraud complaint based on failure to plead scienter even though plaintiff made a strong case that defendant did make false statements); *Howe*, 238 F. Supp. 3d at 1053 (conclusory allegations of scienter are insufficient to satisfy the PSLRA); *Babin*, 2017 WL 403568, at *9 (allegations that defendant made assertions "with full knowledge that he was misrepresenting and omitting material facts" were conclusory and did not satisfy the PSLRA's pleading requirements); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 774–75 (N.D. Ill. 2010) (plaintiff's allegations that defendants had financial motive, timing of misrepresentations was suspicious, and misrepresentations were

extreme failed to plead scienter because inference is not "at least as compelling" as non-culpable inferences).

Because Plaintiffs have failed to adequately plead the misrepresentation and scienter elements of a securities fraud claim, the Court need not address Defendants' additional arguments regarding Plaintiffs' failure to plead economic loss or loss causation. Defendants' motion with respect to the securities fraud claim is granted, and Count III of Plaintiffs' Amended Complaint is dismissed.

### D. Copyright Infringement (Counts IV–VIII)

In Counts IV through VIII, Plaintiffs bring various claims related to Defendants' alleged copyright infringement of the PMS source code. In Count IV, Plaintiffs seek a declaration that Defendants do not have a license to use the PMS source code. [See 31, ¶¶ 90–95.] In Count V, Plaintiffs bring a claim for copyright infringement of the PMS source code. [*Id.* ¶¶ 96–109.] In Counts VI and VII, Plaintiffs bring claims for contributory copyright infringement based on Defendants' customers' continued use of the PMS source code. [*Id.* ¶¶ 110–24.] Finally, in Count VIII, Plaintiffs seek injunctive relief relating to Defendants' alleged infringement. [*Id.* ¶¶ 125–26.] Defendants argue that the existence of an affirmative defense—a valid license—is plain from the face of the Amended Complaint and precludes Plaintiffs from recovering on any of these claims. [See 34, at 20–25.]

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner * * * is an infringer of the copyright." 17 U.S.C. § 501(a). The Copyright Act grants a copyright owner the exclusive rights to reproduce, prepare derivative works, distribute copies of, and display a copyrighted design to the public. 17 U.S.C. § 106. "To state a claim for direct copyright infringement, a plaintiff must allege facts setting forth (1)

ownership of a valid copyright in a work and (2) the copying of elements of the work that are original." *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.* 499 U.S. 340, 361 (1991)). To state a claim for contributory copyright infringement, a plaintiff must plead "(1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement." *Id.* (quoting *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005)).

"[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)); see also Fed. R. Civ. P. 8(c)(1) (noting that a license is an affirmative defense). "An entity that holds a copyright license * * * can only commit copyright infringement (rather than breach of contract) if it exceeds the scope of the license." *Boatman v. Honig Realty, Inc.*, 2017 WL 3872479, at *2 (N.D. Ill. Sept. 5, 2017) (citing *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 921 (N.D. Ill. 2009)).

Because the existence of a license is an affirmative defense, Plaintiffs are not required to negate that defense in their complaint. *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993). However, if a plaintiff pleads enough facts to show that his suit is without merit, "he has pleaded himself out of court." *Id.*; see also *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011) ("When the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings."); *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999) (affirming dismissal of copyright infringement claim based on terms of contract attached to complaint). A Rule 12(b)(6) motion should not be granted based on an affirmative defense unless

a plaintiff alleges facts establishing an "impenetrable defense" to the claim. *Tamayo*, 526 F.3d at 1086.

Beginning with the claim for direct copyright infringement, Plaintiffs allege that SFR is the sole owner of the registered PMS source code and that Defendants have infringed the copyrights for the PMS source code without approval or authorization by reproducing the code, preparing derivative works based on the code, and distributing copies of the code. [See 31, ¶¶ 96–109.] Plaintiffs have also attached to the amended complaint a copy of the License Agreement between Home Invest Technologies, LLC, SFR, and Brechbill that licenses the PMS source code. [31, Ex. D.] Plaintiffs do not allege that Exhibit D to its complaint is a false document or otherwise argue that Exhibit D is not the License Agreement covering the PMS source code that it alleges is being infringed by Defendants.

In this License Agreement, Plaintiffs grant to Home Invest Technologies LLC and its affiliates "the right and license to use the Licensed Software and Documentation throughout the universe for the Permitted Use in accordance with the terms and conditions of this Agreement. The rights and licenses hereby granted are non-exclusive, royalty-free, perpetual, irrevocable, freely transferable, [and] freely sublicensable." [*Id.* § 2.1.] Pursuant to this license Home Invest entities have the right and license to install, execute, and run as many copies of the PMS as necessary; reverse engineer the PMS; prepare and use modifications to the PMS, and grant sublicenses as may be required for authorized users. [*Id.* § 2.2.] "Authorized Users" include Home Invest entities, their agents, customers, contractors, sub-contractors, consultants, vendees, sublicensees, and their respective employees. [*Id.* § 1.] The term of the License Agreement "commences as of the Effective Date and will continue indefinitely unless terminated earlier pursuant to any of its express provisions." [*Id.* § 11.1]

"Copyright licenses are to be construed like any other contracts and interpreted under state law." *Boatman*, 2017 WL 3872479, at *2. This principle applies on a motion to dismiss. See *Kennedy*, 187 F.3d at 695 (construing contract at motion to dismiss stage and concluding that, because it granted a non-exclusive implied license to defendant, district court was correct that defendant was not liable for copyright infringement); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 2010 WL 148389, at *14 (E.D. Wis. Jan. 12, 2010) (dismissing copyright infringement claim at Rule 12(b)(6) stage where defendants had a license and plaintiff did not allege that defendant exceeded the scope of the license), aff'd, 658 F.3d 662 (7th Cir. 2011); *Rosati's Franchise Sys., Inc. v. Rosati*, 2006 WL 163145, at *6–7 (N.D. Ill. Jan. 17, 2006) (construing license agreement at Rule 12(b)(6) stage and dismissing trademark infringement claim because defendants had a license to use marks).

Therefore, the Court can interpret the License Agreement at this stage to determine whether Defendants have a license to the PMS platform. "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). Plaintiffs allege that Defendants are liable for copyright infringement because they have continued to use Plaintiffs' registered source code, make derivative versions of the PMS source code, and have continued to allow their customers to use, access, and make reproductions of the source code. [31, ¶¶ 63, 101–03.] But the License Agreement specifically provides that the PMS source code license allows Home Invest Technologies LLC and its affiliates to "install, execute and run as many copies of the Licensed Software on Licensee's and its Affiliates' respective networks as may be necessary." [31, Ex. D § 2.2(a).] The License Agreement also grants Home Invest Technologies LLC and

affiliates the right and license to have authorized users access and use the PMS platform, make modifications to the PMS platform and make copies of those modifications, and grant sublicenses as required to any authorized user (which is defined to include customers of Home Invest) [*Id.* § 2.2(b), (f), (h).] Plaintiffs have not alleged any facts that would support the inference that this license is invalid in any way or that Defendants' actions have exceeded the scope of the license. The closest they come is their allegation in the claim for declaratory relief (Count IV) that "Plaintiffs, on the one hand, claim no license exists, while Defendants contend that one does." [31, ¶ 92.] But there are no facts in the amended complaint to support Plaintiffs' claim that no license exists and it the factual basis for Plaintiffs asserting this claim is unclear.[8] Without any such allegations, the Court can only rely on the unambiguous language of the License Agreement that plainly grants a non-exclusive license for the PMS platform to Home Invest that includes the rights to reproduce the code as well as create derivative versions of it. Therefore, Plaintiffs' claim for direct copyright infringement must be dismissed.

Plaintiffs argue that they have pled the *prima facie* elements of a copyright infringement claim and that the Court should ignore Defendants' arguments regarding the License Agreement because those arguments go to the merits of the claim rather than the sufficiency of their pleading. [35, at 15.] This contention ignores Seventh Circuit case law that a plaintiff can allege facts demonstrating that a lawsuit has no merit and thus plead himself out of court. See *Tregenza*, 12 F.3d at 718; see also *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir 2012) (confirming that a district court can "properly dismiss [a] suit on the basis of an affirmative defense" at the motion to dismiss stage).

---

[8] Plaintiffs have included a claim for fraudulent inducement in Count I, which could support a claim that the License Agreement is invalid. But, Plaintiffs do not make that argument and, in any event, Plaintiffs have failed to state a claim for fraudulent inducement.

Plaintiffs also, it should be noted, insist in their briefing that "[t]here is no dispute that the Parties entered enforceable agreements, namely the License Agreement, Consulting Agreement, and Unit Award Agreement." [35, at 7.] Plaintiffs also plead the existence of the License Agreement as an enforceable contract in connection with their breach of contract claim. [31, ¶¶ 35, 80–83.] Plaintiffs are certainly entitled to plead different theories of relief in the alternative, but there is no indication in the allegations of the amended complaint that (1) Plaintiffs intend to plead their breach of contract and copyright infringement claims in the alternative, or (2) if this is what they intend to do, how they allege that the License Agreement is not an enforceable agreement such that it does not provide a complete defense to the copyright infringement claims.

Plaintiffs have presented no allegations that call into question the validity of the License Agreement that they attached to their own amended complaint. And the face of the complaint, along with the documents attached to it, establish the existence of a valid affirmative defense to Count V's direct copyright infringement claim. Accordingly, Count V must be dismissed. Direct copyright infringement is a necessary element of contributory copyright infringement as well. See *Denison v. Larkin*, 64 F. Supp. 3d 1127, 1135 (N.D. Ill. 2014) ("In order to have a valid claim for contributory or vicarious copyright infringement, Plaintiff must allege a valid direct copyright infringement claim."); *Flava Works, Inc.*, 2012 WL 2459146, at *2 (direct infringement is an element of contributory infringement). Thus, the existence of the License Agreement precludes Plaintiffs from pursuing contributory copyright infringement claims in Counts VI and VII.

Plaintiffs' claims in Counts IV and VIII likewise are dependent on Plaintiffs' direct copyright infringement claim. In Count IV, Plaintiffs seek a declaration that Defendants do not have a license to use the PMS source code or platform. In Count VIII, Plaintiffs seek injunctive

relief impounding Defendants' infringing materials.  Because the existence of a valid license precludes Plaintiffs' infringement claims, these related claims are also dismissed.

In sum, Plaintiffs' copyright infringement-related claims in Counts IV through VIII are dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion [33] is granted in part and denied in part. The motion is denied with respect to Count II, and Plaintiffs may proceed with their breach of contract claim against Home Invest LLC, Home Invest Operations LLC, and Home Invest Technologies LLC.  The motion is otherwise granted, and Counts I, III–VIII in the Amended Complaint are dismissed.  Plaintiffs are given until October 12, 2018 to file an amended complaint regarding the dismissed claims consistent with this opinion if they choose to do so.  This case is set for further status on October 23, 2018 at 9:00 a.m.

Dated: September 14, 2018

_____
Robert M. Dow, Jr.
United States District Judge